JAMES A. LUSK *v.* CHARLES B. CHURCH.

In the present legislation of the State an action by a slave for freedom cannot be maintained.

APPEAL from the Fifth District Court of New Orleans, *Eggleston,* J. *Mott & Fraser,* for plaintiff. *L. M. Day,* for defendant and appellant.

BUCHANAN, J. The plaintiff purchased of one *Dougherty,* in June, 1846, a slave named *Dennis,* who had been purchased by *Dougherty* in March, 1846, from the defendant. In the sale from *Dougherty* to plaintiff, passed before a Notary Public in New Orleans, the seller, besides his own warranty, asssigned to the purchaser all his rights and actions of warranty against the defendant. The slave ran away in June or July, 1847; and plaintiff, by the present action, instituted in October, 1854, seeks to recover his value from defendant; not upon the warranty of the latter against redhibitory vices, but upon the warranty of title; the plaintiff alleging in his petition that, at the time of the sale from defendant to *Dougherty,* the boy *Dennis* was free. The petition makes no mention of the slave having ran away from service. It alleges that in the month of June or July, 1847, "the said *Dennis* asserted that he was free, and that he never was the slave of the said *Church,* the said *Dougherty,* or of petitioner, and that, from that time, his services were entirely lost to petitioner." The fact of running away is shown by the evidence offered by plaintiff on the trial of the cause.

There is no allegation that defendant, when he sold *Dennis* as a slave, was cognizant of his pretended freedom. No fraudulent practice is charged upon the defendant. This is purely and simply an action of warranty of title. The plaintiff says to defendant "You have sold me a free man for a slave. The price which I paid you was therefore paid without a consideration, and you are bound to restore it to me."

A peculiar feature in this case is, that *Dennis* himself has never claimed his freedom in any legal proceeding. It would seem from the allegations of the petition, that upon the negro's simple assertion of his freedom made some years before the institution of this suit, the plaintiff had voluntarily relinquished all claims to his services.

But the facts, as disclosed by the evidence, are, that plaintiff who resides in New Orleans, having hired *Dennis* as a cabin waiter to a captain of a steamboat trading between New Orleans and St. Louis, the boy served faithfully in that capacity during the running season in the winter and spring of 1846–47; that upon the boat being laid up for the summer at St. Louis, the boy *Dennis* absconded at that place, and escaped into the adjoining State of Illinois; since which time there is no account of him, and his services have been lost to plaintiff. A suit was brought by the present plaintiff against *Captain Swon,* his lessee, in October, 1848, for the value of the boy *Dennis,* on the ground that he had been lost to plaintiff through the lessee's fault. The lessee defended this suit upon the ground that he was not liable, under his contract with plaintiff, for the boy's running away; and on the further plea, that the boy was not the property of plaintiff, but was free.

Judgment was rendered in that suit in favor of the defendant, *Swon,* against the present plaintiff, and in favor of the plaintiff against the present defendant, whom he had called in warranty. The present plaintiff did not appeal from this

judgment; but the present defendant did appeal; and the judgment as against *him* was reversed by this court, upon an exception filed by him to the call in warranty, that the plaintiff had never been evicted by the judgment of any court, and that no suit had been brought, either by the negro himself to recover his freedom, or by any one else to evict him, and that plaintiff had no right to call him in warranty. See the case of *Lusk* v. *Swon*, reported in 9th An., 367. In the reasons for judgment, this court said : " The Article 2495 C. C. authorizes a plaintiff to notify his vendor, when he is obliged to commence judicial proceedings against one disturbing him in his possession, of the action which he is commencing. But in an action like this, to which neither the negro himself is a party, nor any one else asserting a title adverse to the plaintiff, the Article 2495 of the Code is not applicable, and there is no rule of practice which would authorize the plaintiff to proceed against his warrantor, except by a direct action in which he assumes the burthen of proving that the negro was free when he purchased him, as a ground for annulling the sale and recovering back the price."

Upon the hint contained in the passage above-quoted, the plaintiff has acted in instituting the present suit. He distinctly undertakes to prove that *Dennis* was free when he was sold by defendant as a slave. The action, in other words, is an action for freedom of a slave, instituted not by the slave himself, but by a party who holds a title to him as purchaser, against the party from whom he purchased. We are much inclined to doubt the right of plaintiff to institute such an action, unaccompanied with any charge of fraud against his vendor. But as the opinion of this court above-quoted, is not guarded by any qualification, we shall abstain, *pro hâc vice*, from deciding upon the right of a party to stand in judgment in this form, although the argument is pressed upon us by the counsel of defendant.

It is not necessary that we should pass upon that point : for an examination of the record shows us that the state of facts exhibited by plaintiff, in the depositions of witnesses examined under commission, is identical with that of the case of *Louisa Marshall* v. *Watrigant*, lately decided by us, and upon which we held that, in the present legislation of the State, an action could not be maintained for freedom. The case referred to was a suit by the slave herself for her freedom. And it will not be doubted that the plaintiff in the case at bar, is not in a more favored situation than the slave himself would be, were he before us as plaintiff.

The judgment of the District Court is, therefore, reversed, and judgment is rendered in favor of defendant, as in case of non-suit, with costs in both courts.

SPOFFORD, J., took no part in this case.